159 N.J. Super. 360 (1978)
388 A.2d 244
ANN MC FADDEN AND WILLIAM MC FADDEN, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
DOROTHY M. TURNER, D. KENNEDY AND JANE DOE, FIRST AND LAST NAME BEING FICTICIOUS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Decided May 9, 1978.
*363 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Keith W. Martin argued the cause for appellants (Mr. Richard A. Amdur, attorney; Mr. Joseph K. Cooney on the brief).
Mr. Willard Geller argued the cause for respondents (Messrs. Picone and Geller, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
The primary question raised by this appeal is whether a plaintiff is barred from commencing a personal injury action against an alleged tortfeasor after having obtained partial recovery for the injury from the tortfeasor's employer in a prior action against the employer alone based exclusively on the employer's vicarious liability for the employee's causative act of negligence.
The question arises out of a largely undisputed factual background. Plaintiff Ann McFadden, while a patient at the Medical Center at Princeton (hospital), fell on a piece of soap left on the bathroom floor, sustaining serious injuries, including a herniated disc whose treatment required two subsequent hospitalizations and, ultimately, a laminectomy. The medical expenses incurred for treatment of the injuries as stated in plaintiff's answers to interrogatories were close to $5,000. She sued the hospital on a respondeat superior theory for the negligence of its employees in maintaining the bathroom in an unsafe condition. In a bifurcated trial she obtained a liability verdict against the hospital, the sole defendant in that suit. The claim was, however, settled before the damages trial for a total compensatory sum of $9,500. The release of the hospital executed by plaintiffs in connection with the settlement is silent as to whether the hospital's employees were also being released, but the letter of transmittal of the settlement documents by plaintiff's attorney did state that "This settlement is predicated on the defendant's hospital statute limitation of *364 $10,000.00 liability." The statutory reference was obviously to N.J.S.A. 2A:53A-8, which so limits the negligence liability of hospitals to their patients. Since, however, the limitation does not extend to the hospital's employees, who are accordingly obligated to respond in full for the damages resulting from the acts of negligence, N.J.S.A. 2A:53A-7, and since plaintiffs believed that the amount of their compensatory damages exceeded the hospital's limitation, they then commenced this action against these defendants, who were the floor nurses at the time the injury was sustained and were alleged to be those employees of the hospital actually responsible for the unsafe condition which resulted in the accident. Because of the identity of this cause of action and that prosecuted in the prior suit against the hospital, defendants, relying on the so-called entire controversy doctrine, moved for summary judgment dismissing the complaint. It is from the denial of that motion that defendants, on leave granted, appeal. We affirm.
At the outset we note that this court, in Moss v. Jones, 93 N.J. Super. 179, 185 (App. Div. 1966), has heretofore held that when a plaintiff has a cause of action against two possible defendants, namely the negligent actor and the person vicariously liable for the negligent conduct, he need not join both in a single action but has the option of suing them separately in successive actions. The rationale permitting successive litigation is that although the act of negligence complained of is the same in each action, there are nevertheless two distinct and separate persons responsible to the plaintiff, the actual tortfeasor himself and the person vicariously liable for the tort. Thus a plaintiff has two separate causes of action which he may prosecute separately, there being "nothing mandatory as to joinder, when liability is several or joint and several." Moss v. Jones, supra. This holding accords with the Restatement view. See Restatement, Judgments, § 94 at 467 (1942); Restatement, Judgments 2d (Tentative Draft No. 3, 1976), § 94 and Comment (a) at 72-75. The fact, however, that the *365 same alleged wrongdoing is the basis of two separate actions is not entirely without preclusive consequences. Thus, it is well settled that if the first suit, whether against the actual tortfeasor or the person vicariously liable, fails because of an adjudication that the injury was not caused by the actual tortfeasor's negligence, plaintiff, having had his day in court with respect to the underlying merits of the claim, will be precluded from relitigating the identical factual issue in the second suit by reason of res adjudicata/collateral estoppel considerations. See Restatement, Judgments, §§ 96 to 99 at 472-495 (1942); Restatement, Judgments 2d (Tentative Draft No. 4, 1977), § 99, Introductory Note and Reporter's Note at 50-66; Restatement, Judgments 2d (Tentative Draft No. 3, 1976), § 99 and Introductory Note and Reporter's Note at 89-102. And see cases collected in Annotation, "Res Judicata  Same Accident  New Party." 23 A.L.R. 2d 710, 726-735 (1952), and Later Case Service. And see Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 478-479 (1969). It is also clear that a plaintiff is entitled to only one satisfaction for the same loss. See generally, Theobald v. Angelos, 44 N.J. 228, 235, 239 (1965); Theobald v. Kenney's Suburban House, Inc., 48 N.J. 203, 206-209, 212 (1966). Hence, if he has obtained a judgment in the first litigation, satisfaction thereof will bar his prosecution of a second action based on the same harm. If, however, plaintiff has been successful in the first action and the judgment in his favor obtained therein remains unsatisfied, he is free to proceed against the other party whose responsibility to him for the harm presents a fact issue not foreclosed by reason of a prior adverse adjudication. Thus, as was held in Moss v. Jones, supra,
* * * [A] person injured by the negligence of an agent or servant may sue the agent or servant and the principal and master in one suit, or may proceed against them in separate suits, and the recovery of a judgment, not satisfied, against the agent or servant does not bar a separate suit against the principal or master.
*366 We are satisfied that a partial satisfaction of the judgment in the first suit has the same nonpreclusive effect, at least in respect of the difference between partial and full recovery. This is particularly so where, as here, damages were not adjudicated in the first suit and a different measure of damages applies as between the actual wrongdoer and the party vicariously liable. See Restatement, Judgments 2d (Tentative Draft No. 4), § 99(2) (b), which provides, among other things, that a judgment in favor of the injured person in the first action is conclusive upon him as to the amount of the damages unless there is a legal disability against recovery of full damages in the first suit. Thus, had the damages portion of the first suit here gone to trial and resulted in a verdict of $10,000 or less, plaintiffs, entitled to and presumably recovering that amount, would have been barred from commencing this second suit. If the jury had returned a verdict in excess of $10,000, that amount would have constituted a ceiling on the recovery in this suit. Damages not, however, having been adjudicated but rather settled between plaintiffs and the vicariously liable party in the first suit, the initial question to which we must address ourselves is whether the fact of the settlement and the release of the vicariously liable party in the first action militates here against the application of the nonpreclusionary rule of the Restatement and Moss v. Jones. We are satisfied that it does not, either conceptually or factually.
The general rule in this jurisdiction is that a release of one tortfeasor will not release others who may also be liable to plaintiff for his harm unless the release is so intended or the plaintiff receives as a result thereof either full satisfaction or satisfaction intended as such. Breen v. Peck, 28 N.J. 351 (1958). While that departure from the common law was formulated in the context of multiple acts of negligence committed by concurrent tortfeasors, each of whom was himself actually rather than merely vicariously liable, we see no reason why the rule should not apply as well to the single act of negligence for which both the actual wrongdoer and *367 his master or principal are each independently liable. The rationale of the rule is equally apposite whether the liability is actual or vicarious  namely, that plaintiff is entitled to pursue all those who are independently liable to him for his harm until one full satisfaction is obtained. Where the co-tortfeasors are each liable to plaintiff because of their respective distinct acts of negligence, obviously plaintiff is not precluded from suing one by reason of a prior adjudication adverse to him with respect to the other. But that difference in precautionary consequences has, in our view, no bearing at all on the question of the effect of a release given to one co-obligor. We are aware of earlier decisions by our trial courts holding that the release of either the actual tortfeasor or the person vicariously liable serves to relieve the other as well where, as here, the document of release does not expressly reserve the right to proceed against the other. See Aljian v. Ben Schlossberg, Inc., 8 N.J. Super. 461 (Law Div. 1950); United States Fidelity and Guar. Co. v. Goetze, 108 N.J. Eq. 210 (Ch. 1931). These cases were, however, decided prior to Breen v. Peck, supra, and we fail to discern therein any persuasive reason for not applying the intent/full satisfaction test of Breen to this special category of joint obligor release. But see Mayfair Fabrics v. Henley, 101 N.J. Super. 363, 375 (Law Div. 1968). We are also aware of the divergent views taken by other jurisdictions as to the question of whether the release of the master or servant releases the other. See Annotation "Tort of Servant  Release  Effect," 92 A.L.R.2d 533 (1963), and Later Case Service. We concur, however, with the view expressed by such cases as Biles v. Harris, 521 P.2d 884 (Okl. Ct. App. 1974), holding that the consequences of the release of a master or servant vis-a-vis the other are not different than those of a release of one actual joint tortfeasor vis-a-vis another and hence that the negligent employees are not released by a release of the employer where no such intent to release is manifest. We further note that this is the view proposed *368 by § 95 of Tentative Draft No. 3 of the Restatement, Judgments 2d, supra, which rejects the rule of § 95 of the original Restatement to the effect that the release of one co-obligor releases all. And see the Tentative Draft, supra, Comment (b) on § 99 at 94, also observing that the release of either master or servant does not ipso facto release the other.
Applying the intent/full satisfaction test of Breen v. Peck, supra, we are persuaded by this record that the instant defendant employees were not here intended to be released and that the settlement amount was not intended to and did not, in fact, constitute full compensation for the claim. That the $9,500 sum was predicated on the hospital's limitation of liability rather than on the fair value of the damages claim is a virtually self-evident proposition. Not only was that basis of the settlement made clear in the transmittal letter referred to but it is also obvious to us that the hospital's liability having already been adjudicated, the verdict value of the claim, considering the nature of the documented injury and its sequelae and the extent of the medical expenses, was patently substantially in excess of the hospital's liability. We feel confident in assuming that the settlement figure of $9,500 was reached in these circumstances not because plaintiffs may have believed that a prospective judgment could have been less than $10,000 but, rather, because of the $10,000 maximum, they were willing to deduct from the recoverable amount a figure roughly equivalent to their anticipated trial expenses.[1]
Finally, defendants urge that we reconsider the express holding of Moss v. Jones, supra, 93 N.J. Super. at 184-185, that the successive suit here should be barred, if for no other *369 reason, on the basis of the entire controversy doctrine as developed by such decisions as Ajamian v. Schlanger, 14 N.J. 483 (1954), cert. den., 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954), and Falcone v. Middlesex County Med. Soc., 47 N.J. 92 (1966). In response to that argument, Moss v. Jones concluded that
* * * [T]hose cases involved the question of whether a plaintiff may fragmentize his claims against the same defendant, by seeking a measure of relief in one suit and, having obtained it, thereafter seek additional relief in a second suit by reason of the same alleged wrong. The Supreme Court said that he may not; that a plaintiff should seek all of his relief against the same defendant for the alleged wrong in his initial action. We have a different situation herein, because the second action is against a different person and pursuant to the rule of several liability. [93 N.J. Super. at 184-185]
Although we are convinced that it is far preferable for the co-obligors to be joined in a single action and while the temptation to require that to be done by an application of the entire controversy doctrine is formidable, we nevertheless adhere to our former determination that in those circumstances the joinder rule is permissive and not mandatory. We reach that conclusion because of our continued perception of the entire controversy doctrine as a rule of mandatory joinder of claims, not of parties. As we understand the doctrine, its essential purpose is to assure a party to litigation that that litigation will be conclusive as to the entire matter which is its real subject. It is in effect a principle of repose intended to protect one who is already a party to litigation from the expense, delay and harassment implicit in multiple successive actions whose individual scopes are limited to only a fragment of the complete dispute. As we said in Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 293-294 (App. Div. 1977), the jurisprudential basis of the doctrine is the conception that litigants in an action should not be required, after final judgment therein is entered, "to engage in additional litigation in order to conclusively *370 dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions." Thus the entire controversy doctrine operates, and was intended to operate, to prevent a party from being compelled to successively litigate. Being compelled to successively litigate does not, however, mean that one may not elect to successively litigate so long as he has a viable cause of action to litigate and so long as his election does not result in another's compulsion. So here. Plaintiffs have a viable cause of action against these defendants by reason not only of the allegations against them but also by reason of the substantiation of those allegations in the first action. These defendants have not yet been called upon to answer for their alleged negligence and for plaintiffs' unsatisfied loss resulting therefrom. The principles of repose and conclusiveness underpinning the entire controversy doctrine do not therefore apply to them at all. In short, the defendants here, having been omitted from the first action and hence not subject to vulnerability therein, are not prejudiced in any substantial or fundamental way by the prosecution of this action. We perceive no persuasive reason based on the procedural facts and chronology before us which would justify their immunity from suit at the expense of the plaintiffs' right to be made whole. Indeed, the technique of successive suits here had the potential of relieving these defendants both of the obligation to defend on the merits and of the obligation to respond in damages since, if plaintiffs had lost the initial action against the hospital, the preclusionary consequence here urged would then have obtained.
We believe that it is the inapplicability of the principles of repose and conclusiveness which accounts for the limitation heretofore of the entire controversy doctrine to the joinder of claims among those already litigating and explains the fact that it has not been heretofore extended to require joinder of nonparties whose presence is not indispensable.[2] *371 See R. 4:28-1. We are further cognizant of the fact that one of the significant subsumed consequences of the entire controversy doctrine is its effect on the administration of the civil court system, which is thereby spared the burden in cost and time of successive litigation raising issues susceptible of adjudication in a single action. Efficiency of the civil justice process is, of course, a compelling consideration to the extent that it contributes to the ability and capacity of the court system to expeditiously dispose of its steadily increasing volume of litigation. All litigants are, therefore, the beneficiaries of rules and procedures which reduce the demands upon the system. The successive litigation here certainly runs counter to those efficiency desiderata since the same underlying cause of action will be relitigated. But in our view, efficiency is not by itself a sufficient basis for denying a party access to the courts where it is not accompanied by the dimension of prejudice to a party which underlies the entire controversy doctrine.[3] We would, therefore, *372 be loathe to prevent plaintiffs from pursuing a complete remedy in two suits only because they had the option of pursuing it in one, particularly where they were without notice that the failure to exercise that option would prove fatal. It may well be that what has been heretofore optional should be made mandatory on a prospective basis and perhaps by the exercise by the Supreme Court of its rule-making power. We do not, however, regard it as appropriate to our function as an intermediate court to engage in prospective rule-making.
Affirmed.
BILDER, J.S.C. (temporarily assigned), dissenting.
I must most respectfully dissent from my colleagues. I do this with some diffidence because my view stems largely from Judge Pressler's excellent analysis of the Entire Controversy Doctrine in William Blanchard Company v. Beach Concrete Company, 150 N.J. Super. 277 (App. Div. 1977).
The instant case presents the question as to whether the Entire Controversy Doctrine bars the institution of separate suits against a master on the theory of respondeat superior and its servants based upon identical negligent acts.
It appears to me that the theory of the Doctrine suggests a bar. See William Blanchard Company v. Beach Concrete Company, supra, 292-294. I recognize that most of the cases cited involve the same parties in both actions  i.e.; the parties are trying to split their controversy inter se into separate suits. In the instant case, the factual and legal issues are essentially the same but the parties defendant are different.
*373 A situation more analogous to the instant case was considered by this court in Thatcher v. Jerry O'Mahony, Inc., 39 N.J. Super. 330 (App. Div. 1956), a case in which additional parties were involved but the situation was dealt with prospectively. In Thatcher the plaintiff sued a corporation to set aside a corporate loan and stock option agreement. He failed to join the beneficiaries of the agreement. In sustaining a dismissal on the ground that the beneficiaries were necessary parties defendant, the court relied on the Entire Controversy Doctrine. Id. at 335.
While I recognize that the application of the Entire Controversy Doctrine so as to bar the plaintiffs' subsequent suit against the nurses would be breaking new ground, the extension seems to me compelled by both logic and the basis for the Doctrine.
I would reverse the trial court's denial of defendants' motion for summary judgment.
NOTES
[1] In reaching this conclusion we are disregarding, because not properly part of the appellate record, plaintiffs' affidavit submitted to us with their supplemental brief filed at our request at oral argument. The affidavit states that they orally apprised the hospital of their intention that the release of it not release the negligent nurses.
[2] We are aware of a possible reading of Thatcher v. Jerry O'Mahony, Inc., 39 N.J. Super. 330 (App. Div. 1956), as an extension of the entire controversy doctrine to require joinder of parties. We are satisfied, however, that the primary ratio decidendi there was the rule requiring joinder of indispensable parties. We further note that Thatcher involved a dimension of prospective fractionalization of a single controversy not here present. We also limit our observation of the circumscription of the doctrine to, as we have said, the ordinary situation. We recognize that extraordinary circumstances may inhere in particular party and claim relationships which require joinder of otherwise separate claims by separate litigants. See, for example, Ekalo v. Constructive Serv. Corp. of America, 46 N.J. 82 (1965), implemented by R. 4:28-3(b), requiring joinder by a spouse asserting a per quod claim in the negligence action brought by the injured spouse. But note that this rule of mandatory joinder of parties in respect of derivative claims has not been extended to per quod claims of parents in respect of their children.
[3] It is suggested that the hospital might be prejudiced by this litigation in respect of its common law right to indemnification, particularly if plaintiffs failed to obtain a judgment adjudicating the nurses' liability. We note, however, that the possible adverse consequences to the hospital would be limited to its obligation to relitigate the indemnity issue directly against the nurses if it chose, as is unlikely, actually to pursue its indemnification rights, and we note, further, that the possibility of inconsistent results could have been avoided by the hospital itself had it chosen to implead the nurses in the original litigation pursuant to R. 4:8-1.