40 A.3d 63 (2012)
425 N.J. Super. 135
Marquis A. WALKER, Executor and Personal Representative of the Estate Of Sabrina Griffin, Deceased, Plaintiff-Appellant,
v.
Ilmia CHOUDHARY, M.D., Tara Kiger, M.D., Dominic Diorio, M.D., Frank LaSala, M.D., S.J.E.R. Physicians, P.C., South Jersey Regional Medical Center, and South Jersey Healthcare, Defendants-Respondents.
No. A-1425-10T1.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 2011.
Decided March 30, 2012.
*65 Patricia M. Giordano (Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock & Dodig) argued the cause for appellant.
Mary Ann C. O'Brien argued the cause for respondent Tara Kiger, M.D. (Crammer, Bishop & O'Brien, attorneys; Ms. O'Brien, on the brief).
Jean Chetney, Woodbury, argued the cause for respondent South Jersey Health Systems Emergency Physician Services, P.A. (Blumberg & Lindner, LLC, attorneys; Ms. Chetney, on the brief).
*66 Mary Grace Callahan argued the cause for respondent South Jersey Healthcare (Grossman & Heavey, attorneys; Ms. Callahan, on the brief).
Before Judges CUFF, WAUGH and ST. JOHN.
The opinion of the court was delivered by ST. JOHN, J.S.C. (temporarily assigned).
In this medical malpractice and wrongful death action, plaintiff, the executor of decedent's estate, appeals three orders dated August 1, 2008, November 20, 2009, and July 9, 2010, each granting summary judgment to defendants, a doctor, a medical practice group, and a company that owns a hospital, respectively, allegedly responsible for administering care to decedent. Plaintiff contends that one of the doctors sued outside the two-year statute of limitations should be subject to suit under the "relation-back" doctrine, Rule 4:9-3, because she had knowledge of the litigation before the end of the statutory period. Plaintiff also contends that, under the principle of respondeat superior, the medical practice group that employs the doctor and the company that owns the hospital should be subject to suit regardless of whether the action against the alleged tortfeasor doctor is barred by the statute of limitations.
We reverse and remand with instructions for the court to conduct an evidentiary hearing with regard to the doctor's knowledge of the pending litigation and whether she was prejudiced by the delay in naming her as a defendant. We also reverse the summary judgment orders granted in favor of the medical practice group and the company that owns the hospital.

I.
On November 20, 2007, plaintiff Marquis Walker, as executor and personal representative of the estate of Sabrina Griffin (decedent), filed a complaint against Ilmia Choudhary, M.D., Dominic Diorio, M.D., Frank LaSala, M.D., South Jersey Health Systems Emergency Physician Services, P.A. (Physician Services), South Jersey Regional Medical Center (Medical Center), and South Jersey Healthcare (Healthcare). Defendants Choudhary, Diorio and LaSala are doctors employed by defendant Physician Services, the medical practice group engaged to staff the emergency department at the Medical Center. Defendant Healthcare owns the Medical Center.
The complaint alleged wrongful death and medical malpractice by defendants during decedent's treatment at the Medical Center on November 30, 2005, which allegedly resulted in her death on December 5, 2005. All of the above named defendants were served with process on December 5, 2007, which was the last day of the two-year statute of limitations for claims for wrongful death, N.J.S.A. 2A:31-3, and medical malpractice, N.J.S.A. 2A:14-2.
On February 20, 2008, Diorio moved to dismiss the complaint against him based on an Affidavit of Non-Involvement. N.J.S.A. 2A:53A-40. Diorio certified that, while he was an attending physician at the Medical Center on November 30, 2005, he did not administer medical care to decedent. Decedent's medical records indicate Tara Kiger, M.D., who is also employed by Physician Services, was her attending physician on that day.
On February 28, 2008, plaintiff filed a motion to amend the complaint to add Kiger as a defendant. On March 28, 2008, the motion judge entered orders granting Diorio's motion to dismiss the complaint *67 against him and plaintiff's motion to add Kiger as a defendant.
On April 10, 2008, plaintiff filed an amended complaint naming Kiger as a defendant. Kiger answered on June 19, 2008, denying any medical malpractice, while preserving her statute of limitations defense. She subsequently filed a motion for summary judgment, seeking dismissal of the complaint against her, arguing that plaintiff's claims were time-barred. On August 1, 2008, the motion judge heard oral arguments and granted Kiger's motion, dismissing the complaint against her with prejudice.
Following Kiger's dismissal, Physician Services filed a motion for partial summary judgment, seeking dismissal of the claims against it for vicarious liability stemming from Kiger's actions as the alleged tortfeasor, arguing that it could not be liable because Kiger was no longer a defendant in the case. On November 20, 2009, the motion judge granted Physician Services' motion.
On June 9, 2010, plaintiff filed a motion for reconsideration of the summary judgment orders granted in favor of Kiger and Physician Services. Shortly thereafter, the Medical Center and Healthcare cross-moved for partial summary judgment, also seeking dismissal of the claims against them for vicarious liability stemming from Kiger's alleged malpractice. On July 9, 2010, the motion judge denied plaintiff's motion for reconsideration, and granted Medical Center and Healthcare's motion for partial summary judgment.
The parties then filed stipulations dismissing the claims against the remaining individual doctors, Choudhary and LaSala, as well as against the Medical Center.
Plaintiff appeals the summary judgment orders in favor of Kiger, Physician Services, and Healthcare.

II.
"On appeal from an order granting summary judgment, we apply the same standard that governs the analysis by the motion judge." Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J.Super. 224, 230, 903 A.2d 513 (App.Div.) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998)), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). "We therefore must first determine whether, giving the nonmoving party the benefit of all reasonable inferences, the movant has demonstrated that there are no genuine issues of material fact." Id. at 230-31, 903 A.2d 513 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995)). We next analyze whether the motion judge's application of the law was correct. Id. at 231, 903 A.2d 513; see also Prudential, supra, 307 N.J.Super. at 167, 704 A.2d 597. In carrying out our review, however, we owe no deference to the interpretation of the motion judge on matters of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).

A.
We first address the issue of whether the "relation-back" doctrine saves plaintiff's claim against Kiger. R. 4:9-3.
Plaintiff contends that the amended complaint should have been permitted and that the judge should have determined that the claims plaintiff sought to assert against Kiger related back to the original filing date. This position is governed by Rule 4:9-3, which states in full:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set *68 forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.
The rule's first requirementwhether the claim arose out of the conduct, transaction or occurrence set forth in the original pleadingwas undoubtedly met in this case. The original complaint sought relief against the defendants based on plaintiff's allegations that the treating physician committed malpractice which caused decedent's death. The amended complaint merely sought to assert a claim for relief against Kiger based on the conduct set forth in the original complaint.
The rule next requires a determination of whether, during the limitations period, the party to be joined "received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits[.]" Ibid. The rule's scope allows for a plaintiff to add a defendant to an action for a claim that has since become time-barred so long as the new defendant "had such notice, albeit informal, of the action prior to the running of the statute of limitations that he [or she] would not be prejudiced in maintaining his [or her] defense on the merits." Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 4:9-3 (2012). Additionally, the remaining aspect of Rule 4:9-3 to be considered is whether a defendant must have known or should have known within the statute of limitations period that but for the plaintiff's mistake in not naming her as a defendant, the action would have been brought against her personally. See ibid.
It is undisputed that Kiger, like Diorio, Choudhary, and LaSala, was employed by Physician Services and shared the same office address. Those three doctors were served at their office at 10:58 a.m. on December 5, 2007. In support of her motion for summary judgment, Kiger certified: "The first notice that I ever received or knowledge with respect to the claims brought by or on behalf of [decedent] or her estate occurred when I was served with the Amended Complaint in April of 2008." The motion judge accepted Kiger's certification in granting summary judgment.
In support of the motion for reconsideration, plaintiff relied on Kiger's May 2009 deposition testimony, which revealed that she may have had knowledge of the lawsuit prior to the expiration of the statute of limitations. When asked whether she had spoken to Choudhary about the case, Kiger replied that she had, "[a]pproximately two years ago to a year ago at the time the papers were served." Again, when Kiger was asked whether she had spoken with Diorio about the case, she replied that she had, "[w]hen he was first served." This testimony, while not conclusive as to whether Kiger had knowledge of the lawsuit prior to the expiration of the statutory period, clearly contradicts her certification in support of her motion for summary judgment.
*69 At oral argument on the motion for reconsideration, the judge observed that "I did not, back in August of [2008], believe that Dr. Kiger didn't have some knowledge of [the lawsuit]. It is [ ] inexplicable . . . that she wouldn't have maybe known about this." Because Kiger's deposition testimony contradicted her certification, the motion judge should have conducted an evidentiary hearing, of the type prescribed by Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973), to determine when Kiger first learned about the pending litigation and whether the late filing prejudiced her defense.
Our Supreme Court has stated that while "[i]t is true that the time of discovery is a question of fact," it should be determined by "a judge conscious of the equitable nature of the issue before him." Id. at 274-75, 300 A.2d 563. See also Aruta v. Keller, 134 N.J.Super. 522, 529, 342 A.2d 231 (App.Div.1975) (holding that even though the correct and similarly named defendant had no knowledge of the pendency of the action before the limitations period had run, a pre-trial non-jury hearing should be held to determine the reasonableness of plaintiff's conduct and prejudice to the defendant if the suit was not barred). In such a hearing, "[t]he interplay of the conflicting interests of the competing parties must be considered." Lopez, supra, 62 N.J. at 275, 300 A.2d 563.
Here, the judge's decision rested solely on his reasoning that Kiger should have been initially named in 2007 because she was mentioned as decedent's physician in the medical records "prominently in two other places," and that "this is not a case where there were scores of pages of medical records and somewhere obscurely in the middle of that . . . Kiger was mentioned."
While we acknowledge that "statutes of limitations are statutes of repose and the principal consideration underlying their enactment is one of fairness to the defendant[,]" we note that "in each case the equitable claims of opposing parties must be identified, evaluated and weighed." Lopez, supra, 62 N.J. at 274, 300 A.2d 563. It is well-settled that a judge is in the best position to most equitably consider the issue of fairness with regard to when the statute of limitations accrues and when defendants have knowledge of the litigation. See ibid. ("[T]he question as to the application of the statute of limitations is ordinarily a legal matter and as such is traditionally within the province of the court."). See also Aruta, supra, 134 N.J.Super. at 529, 342 A.2d 231 ("Once an action is commenced by the filing of a complaint within time, judicial interpretation is essential to determine whether joinder of a properly named party may be considered timely thereafter."). Generally, the issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant. Lopez, supra, 62 N.J. at 275, 300 A.2d 563. "Where credibility is not involved, affidavits, with or without depositions, may suffice; [but] it is for the trial judge to decide." Ibid.
Admittedly, this case does not fit the typical mold for the assertion of a mistake. Here, there appears little doubt that decedent's records disclosed Kiger's identity as decedent's treating physician before plaintiff ultimately sought to join her after the passage of the limitations period set forth in N.J.S.A. 2A:31-3 and N.J.S.A. 2A:14-2. Although Diorio was listed as decedent's admitting and attending physician on a single page of Healthcare's records, Kiger's identity as decedent's treating physician was indeed displayed in decedent's medical records in several places.
Plaintiff's knowledge of the identity of Kiger suggests that she was not joined *70 because of the error or omission of plaintiff or plaintiff's attorney. The motion judge's decision did not discuss these circumstances or whether the failure to timely join Kiger constituted the type of mistake encompassed by Rule 4:9-3. On remand, the judge should consider and determine the reasons for plaintiff's failure to timely join Kiger.

B.
We now consider whether Kiger had notice of the action prior to the running of the statute of limitations such that she would not be prejudiced in maintaining her defense on the merits.
In considering the question posed by these circumstances, the trial judge must be mindful of our Supreme Court's instruction that Rule 4:9-3 "should be liberally construed." Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 458, 713 A.2d 411 (1998) (quoting Harr v. Allstate Ins. Co., 54 N.J. 287, 299, 255 A.2d 208 (1969)). As such, the rule's goal of permitting a party to correct "pleading errors" or to respond to the "acquisition of new information" should be served so long as a defendant's "right to rely on the repose afforded by the statute of limitations" is not unduly offended. Ibid. (quoting Wimmer v. Coombs, 198 N.J.Super. 184, 188, 486 A.2d 916 (App. Div. 1985)). The rule guides the accommodation of these competing interests by recognizing that a person who has timely notice of a pending action
cannot reasonably object to the late assertion against him . . . provided he is reasonably chargeable with the knowledge that those other claims would have been timely asserted against him but for plaintiff's error . . . and provided further that the late assertion does not prejudice him in maintaining his defense.
[Id. at 459, 713 A.2d 411 (quoting Wimmer, supra, 198 N.J.Super. at 189, 486 A.2d 916) (first alteration in original).]
However, since the motion judge did not analyze the factual questions that emanate from plaintiff's attempt to have the proposed amended complaint relate back to the original filing date, we remand for additional proceedings. The judge may require the filing of additional submissions from the parties as warranted for a full consideration of these interests in determining whether the claims against Kiger ought to relate back to the original filing date.
On remand, if the judge finds that Kiger, within the statutory period (on or before December 5, 2007), had received such notice of the institution of the action that she will not be prejudiced in maintaining a defense on the merits and knew or should have known but for the mistake concerning her identity the action would have been brought against her, the motion to amend the complaint should be granted. R. 4:9-3. If the judge does not so determine, but concludes that the complaint filed against the practice group and Kiger's colleagues should have included her but for plaintiff's good faith mistake or omission and Kiger is not prejudiced, he should consider relaxing the rule's application in the interest of justice and granting the motion to amend. See Aruta, supra, 134 N.J.Super. at 529, 342 A.2d 231 (finding Rule 4:9-3 unduly confining and "relax[ing]" its application in circumstances where a plaintiff would be otherwise barred by the statute of limitations even though he/she "presumably in good faith and with some justification served parties believed to be the correct parties"); R. 1:1-2. See also Viviano v. CBS, Inc., 101 N.J. 538, 551-52, 503 A.2d 296 (1986) (acknowledging the "liberal construction" of Rule 4:9-3 to permit joinder of additional *71 parties after the expiration of the period of limitations).

C.
Given the contradictory assertions as to when Kiger learned about the litigation, it appears that this issue cannot be resolved on affidavits or depositions since demeanor may be an important factor in the judge making his credibility findings. On remand, the judge should consider the totality of the circumstances in arriving at the decision whether the "relation-back" doctrine saves plaintiff's claim against Kiger. R. 4:9-3. The motion judge should conduct a Lopez hearing as was, for example, found appropriate in Aruta, supra, 134 N.J.Super. at 530, 342 A.2d 231. As part of the process, the judge should consider determining the reasons for plaintiff's failure to timely join Kiger and any assertions by Kiger that the delay prejudiced her defense. However, prejudice is unlikely, in this context, because the practice group and other doctors within the group were also sued within the statutory period.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.

III.
If on remand the motion judge determines that the action against Kiger is not saved pursuant to Rule 4:9-3, we address the dismissal of Healthcare and Physician Services in the interest of judicial economy.
At issue is whether Kiger's involuntary dismissal, on statute of limitations grounds, operates as an adjudication on the merits, triggering res judicata and barring plaintiff's timely respondeat superior claim for vicarious liability against defendants, Healthcare and Physician Services, for injuries arising out of the same incident.

A.
As a preliminary matter, we note that it is well-established that "[t]ort liability of a principal and agent . . . is both joint and several." Moss v. Jones, 93 N.J.Super. 179, 184, 225 A.2d 369 (App. Div.1966) (noting that where liability is several, "all parties are proper, but not necessary" and "[t]hey may be sued together or separately"). "Where an injury is caused by the negligence of a servant acting in the line of his employment, a joint action may be maintained against the servant and the master, or against either of them separately." Ibid. (citation omitted). "When a plaintiff has a cause of action against two possible defendants, namely the negligent actor and the person vicariously liable for the negligent conduct, he need not join both in a single action but has the option of suing them separately in successive actions." McFadden v. Turner, 159 N.J.Super. 360, 364, 388 A.2d 244 (App.Div.1978).[1] Although the negligence *72 complained of is the same in each action, two distinct and separate persons responsible to the plaintiff arisethe actual tortfeasor and the person vicariously liable for the tortfeasor's tort. See ibid. Accordingly, a plaintiff has two separate causes of action which can be prosecuted separately, there being "nothing mandatory as to joinder, when liability is several or joint and several." Moss, supra, 93 N.J.Super. at 185, 225 A.2d 369.
Although as a general rule of tort law, liability must be based on personal fault, the doctrine of respondeat superior recognizes a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees. W. Page Keeton, et al., Prosser and Keeton on the Law of Torts §§ 4, 69 at 21-23, 499-501 (5th ed.1984); Rhett B. Franklin, Pouring New Wine into an Old Bottle: A Recommendation for Determining Liability of an Employer Under Respondeat Superior, 39 S.D. L.Rev. 570, 572 (1994). The theoretical underpinning of the doctrine of respondeat superior has been described as follows: that one who expects to derive a benefit or advantage from an act performed on his behalf by another must answer for any injury that a third person may sustain from it. Winkelstein v. Solitare, 129 N.J.L. 38, 40 [27 A.2d 868] (1942) (citations omitted), aff'd per curiam, 130 N.J.L. 158 [31 A.2d 843] (E. & A.1943); 27 Am.Jur.2d Employment Relationship § 459 (1996).
[Carter v. Reynolds, 175 N.J. 402, 408, 815 A.2d 460 (2003).]
Because Healthcare and Physician Services were timely served within the statute of limitations period, plaintiff's action could have been prosecuted against them, even without Kiger being named as a defendant in the complaint. We note it would be incongruous to hold that plaintiff's claim against Physician Services must fail because Kiger was named and then dismissed because the claim was time-barred, while in the same breath observing that the same claim against Physician Services would survive if Kiger had not been named at all.

B.
We now look to whether a prior judgment, so based, is an adjudication on the merits to determine whether it should be accorded res judicata effect against other defendants to the action.
"The term `res judicata' refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505, 589 A.2d 143 (1991). It provides that "a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties . . . in a new proceeding." Ibid. To be accorded res judicata effect, a judicial decision "must be a valid and final adjudication on the merits of the claim." Ibid. Moreover, the matter must be "fairly litigated . . . [such that] it is no longer open to relitigation." Garvey v. Twp. of Wall, 303 N.J.Super. 93, 98, 696 A.2d 71 (App.Div.1997). In Culver v. Insurance Co. of North America, 115 N.J. 451, 460, *73 559 A.2d 400 (1989), our Supreme Court stated:
The doctrine of res judicata "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 [165 A.2d 163] (1960).
. . . .
The application of res judicata doctrine requires substantially similar or identical causes of action and issues, parties, and relief sought. Eatough v. Bd. of Med. Exam'rs, 191 N.J.Super. 166, 173 [465 A.2d 934] (App.Div.1983); Constant v. Pac. Nat'l Ins. Co., 84 N.J.Super. 211, 216 [201 A.2d 405] (App.[Law]Div.1964). In addition, there must be a "final judgment by a court or tribunal of competent jurisdiction." Charlie Brown of Chatham v. Bd. of Adjustment, 202 N.J.Super. 312, 327 [495 A.2d 119] (App.Div.1985).
The element of res judicata with regard to substantially similar or identical causes of action and issues, parties, and relief sought is clearly present, as plaintiff is suing Kiger, Healthcare and Physician Services for the same injuries arising out of the medical treatment of decedent. In this case, the only element of res judicata in serious dispute is the element concerning whether the granting of the involuntary dismissal in favor of Kiger on statute of limitations grounds, constitutes a final judgment on the merits of plaintiff's alleged malpractice claims, barring further litigation against Healthcare and Physician Services.
The motion judge determined that summary judgment in favor of Kiger acted as res judicata, barring plaintiff's claim against Healthcare and Physician Services. "The application of res judicata is a question of law. . . ." Selective Ins. Co. v. McAllister, 327 N.J.Super. 168, 173, 742 A.2d 1007 (App.Div.), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000). Questions of law are reviewed de novo. Manalapan Realty, supra, 140 N.J. at 378, 658 A.2d 1230.
Healthcare and Physician Services argue that the motion judge's dismissal of the complaint against Kiger precludes plaintiff from pursuing the claim against them pursuant to Rule 4:37-2(d), which states that "[u]nless the order of dismissal otherwise specifies, a dismissal under Rule 4:37-2(b) or (c) and any dismissal not specifically provided for by Rule 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits." Healthcare and Physician Services contend that the issue presented "hinges on whether there was an adjudication on the merits of the claim against Kiger" with regard to granting her motion for summary judgment on statute of limitations grounds.
Healthcare and Physician Services' argument, that a "dismissal based on a violation of the statute of limitations . . . [is] an adjudication on the merits" because it is not a dismissal specifically provided for by Rule 4:37-2, has never been specifically addressed by a New Jersey court. Rule 4:37-2 applies to trials, and subsections (b) and (c) concern dismissals after the presentation of evidence and for claims related to contribution. This case was not tried; therefore, Rule 4:37-2 has no bearing on the issues presented. Nowhere in the rule, its comments, or in case law interpreting the rule does a proposition stand for the notion that an employer is immune from liability if a plaintiff's claim against an employee is barred by the statute of limitations.
Nevertheless, we address whether an adjudication arguably "on the merits" for an employee based on the statute of limitations *74 bars suit against the principal for a claim grounded in respondeat superior.
Healthcare and Physician Services rely on the principle that "a verdict which exonerates the employee from liability requires also the exoneration of the employer."[2]Kelley v. Curtiss, 16 N.J. 265, 270, 108 A.2d 431 (1954). This conclusion is rooted in "considerations of fundamental fairness that, if the employee is not to be held responsible for his wrongdoing, the employer whose liability is asserted solely upon the basis of imputed responsibility for his employee's wrong cannot in fairness and justice be required to respond in damages for it." Id. at 271, 108 A.2d 431. However, the concept is premised on the principle that the employee is actually exonerated by a decision on the merits. Here, the judgment was not grounded on a finding that Kiger's care for decedent was not negligent.
New Jersey case law is silent on the narrow issue presented. In other contexts, we have determined that "[a] dismissal with prejudice `constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.'" Feinsod v. Noon, 261 N.J.Super. 82, 84, 617 A.2d 1234 (App.Div.1992) (citing Velasquez, supra, 123 N.J. at 507, 589 A.2d 143), certif. denied, 137 N.J. 314, 645 A.2d 142 (1994). Moreover, the Restatement of Judgments states:
When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment. . ., a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict.
[Restatement (Second) of Judgments § 27(d) (1982) (emphasis added).]
Here, all parties have cited to Mortgagelinq Corp. v. Commonwealth Land Title Insurance Co., 142 N.J. 336, 346, 662 A.2d 536 (1995), which held that:
The term "res judicata" refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated. For a judicial decision to be accorded res judicata effect, it must be a valid and final adjudication on the merits of the claim. Typically, the merits of a claim are adjudicated following a full trial of the substantive issues. Increasingly, however, statutes, rules and court decisions operate to bar retrial of judgments that do not pass directly on the substance of a claim. A judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits "as fully and completely as if the order had been entered after trial."
[(Citations omitted).]
As such, a literal reading of New Jersey precedents arguably indicates that a dismissal with prejudice constitutes an adjudication on the merits, which bars subsequent actions under res judicata. See ibid. We, however, decline to apply that rationale to the facts before us.
"[F]or a judicial decision to be accorded res judicata effect, it must be a valid and final adjudication on the merits of the claim." Mortgagelinq, supra, 142 N.J. at 346, 662 A.2d 536 (emphasis added).
Plaintiff's claims for malpractice and wrongful death were never adjudicated on *75 the actual merits. The basis on which the summary judgment was granted, the statute of limitations, bears no relationship to the actual merits of the case. When summary judgment was granted, the merits were never examined. We agree to label such an order as an adjudication on the merits would be the embodiment of promoting form over substance.
On remand, should the motion judge determine that the suit against Kiger is barred by the statute of limitations, the grant of summary judgment to her will serve as an "adjudication on the merits," but only with regard to her. See Feinsod, supra, 261 N.J.Super. at 84, 617 A.2d 1234. If the action against Kiger is dismissed, the claim against Healthcare and Physician Services should remain to determine if they are liable as principals. Although a motion for summary judgment granted on statute of limitations grounds is technically an "adjudication on the merits," we determine in this context it does not possess the same legal consequences for Healthcare and Physician Services as a summary judgment under Rule 4:37-2.

C.
We conclude an employer can be subject to suit for the negligent actions of its employee under the principle of respondeat superior even though the employee is dismissed because the claims against her or him were filed outside the statute of limitations. Therefore, plaintiff's malpractice and wrongful death claims against Healthcare and Physicians Services are not barred by the doctrine of res judicata and are reinstated.
Accordingly, we reverse the motion judge's grant of summary judgment in favor of Healthcare and Physician Services, and remand for further proceedings.
Reversed and remanded, with instructions consistent with this opinion.
NOTES
[1] In Cogdell v. Hospital Center at Orange, 116 N.J. 7, 20, 560 A.2d 1169 (1989), the Court noted in analyzing the joinder rule and its relationship to the entire controversy doctrine:

Nevertheless, traditionally the party-joinder rule differentiated "indispensable" parties from other persons whose participation in litigation was deemed only "necessary" or "proper." Thus, the mandatory joinder of "necessary" partiesthose with only a material, albeit separable, interest in a controversy-in a single action has not generally been recognized as a constituent part of the entire controversy doctrine. See, e.g., McFadden, supra, 159 N.J.Super. at 369 [388 A.2d 244] (because "entire controversy doctrine [i]s a rule of mandatory joinder of claims, not of parties," plaintiff permitted to sue hospital nurses for injuries sustained under their care when he had already, in a previous lawsuit, won a jury verdict for those same injuries against the hospital on the theory of respondeat superior); See also Aetna Ins. Co. v. Gilchrist Bros., 85 N.J. 550, 558 [428 A.2d 1254] (1981) ("the preclusive effect of nonjoinder of claims arising out of a single dispute or wrong between the parties may not automatically be applied to a failure to join a person as a party to the action.").
[2] Here, Healthcare is asserted to be an indirect employer, having indirectly contracted with Physician Services, which employed Kiger.