**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4399-19

MANSOUR S. MANSOUR,

    Plaintiff-Appellant,

v.

PASQUALE CHIACCHIO and
ELAINE CHIACCHIO,

    Defendants-Respondents.

_____

           Submitted December 1, 2021 – Decided March 2, 2022

           Before Judges Gilson, Gooden Brown, and Gummer.

           On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000084-19.

           Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs).

           Felsenfeld and Clopton, attorneys for respondent Pasquale Chiacchio (Howard L. Felsenfeld, on the brief).

PER CURIAM

This appeal arises out of a dispute concerning an installment contract to sell a home on Long Beach Island. The contract issues are complicated by a series of amendments to the original sales contract, a series of other alleged transactions between the parties, and two prior lawsuits. Plaintiff Mansour Mansour (plaintiff or Mansour) appeals from an order granting summary judgment to defendant Pasquale Chiacchio (defendant or Chiacchio), an order quieting title to the property that recognized Chiacchio as the "sole and exclusive" owner, and an order denying reconsideration. The trial court held that some of the claims asserted by Mansour were barred by res judicata and the entire controversy doctrine because those claims had been or could have been litigated in the prior lawsuits between the parties. In addition, the trial court held that Chiacchio was entitled to summary judgment on the remaining claims related to the sales contract and to his claim to quiet title to the property. We agree and affirm.

I.

We discern the facts from the record, noting that most of the material facts are set forth in written agreements or verified pleadings. On January 20, 2008, Mansour and Chiacchio entered a contract (the Sales Contract) under which Chiacchio agreed to sell to Mansour property located on Long Beach Boulevard

A-4399-19

in Harvey Cedars (the HC Property). The sales contract contained a number of provisions and conditions including (1) a purchase price of $755,000; (2) an "estimated" closing date of February 1, 2011; (3) an agreement that Mansour could occupy the HC Property beginning February 1, 2008, and pay Chiacchio $1,000 per month until the closing; (4) an acknowledgement that the monthly payments would be considered deposits and would be deducted from the purchase price at closing; (5) an understanding that Mansour was responsible for paying all of the property taxes and insurance; and (6) an agreement that all improvements to the HC Property would be the sole property of Chiacchio if Mansour failed to close title on or about February 1, 2011.

Mansour took possession of the HC Property beginning in February 2008. According to Mansour, he rented the HC Property during the summer season and he and his family used the home in the off-season.

Between January 2011 and September 2014, Mansour and Chiacchio executed several written amendments and agreements related to the Sales Contract. First, on January 29, 2011, the parties agreed to extend the closing for a "period not to exceed 36 months." Second, on January 5, 2012, the parties agreed to extend the closing for a "period not to exceed 36 months" from February 1, 2013. In other words, the parties extended the closing until February

A-4399-19

1, 2016. Third, on July 9, 2014, the parties executed a document acknowledging that Mansour had paid Chiacchio $155,000 as a down payment on the HC Property and the "remaining balance of $600,000" would be paid at the closing. Fourth, on September 27, 2014, the parties agreed to again extend the closing, this time without a firm date, and effective September 1, 2016, Mansour would pay Chiacchio $24,000 on September 1 every year until the closing occurred.

Mansour and Chiacchio also had dealings with each other unrelated to the HC Property. Each claimed that he had given the other loans. Chiacchio also claimed he had repaired cars for Mansour, but Mansour had not paid for those repairs. Those loans and claims led to two lawsuits between Mansour and Chiacchio.

Chiacchio filed the first lawsuit in August 2016 in Mercer County under Docket No. MER-L-1550-16 (the Mercer Action). In the Mercer Action, Chiacchio claimed that Mansour had failed to repay several loans, failed to pay for the repairs to several cars, and failed to reimburse Chiacchio for an airline ticket he had purchased for Mansour. Accordingly, Chiacchio alleged that Mansour owed him $49,259.50. Mansour filed an answer and counterclaim in the Mercer Action, contending that the monies Chiacchio was seeking should be offset by a $335,000 loan Mansour had given to Chiacchio in 2008.

4

Accordingly, Mansour claimed that Chiacchio owed him $285,740.50; that is, $335,000 less $49,259.50.

Chiacchio and Mansour settled the Mercer Action on August 24, 2017, with Mansour agreeing to pay Chiacchio $25,000. When Mansour failed to pay the $25,000, on December 22, 2017, a judgment of $49,259.50 was entered against Mansour in favor of Chiacchio in the Mercer Action. No appeal was filed from the judgment in the Mercer Action.

The second lawsuit was brought by Mansour against Chiacchio in September 2017, in the Law Division in Ocean County under Docket No. OCN-L-2726-17 (the Second Action). In the Second Action, Mansour, representing himself, alleged that he had made a $100,000 business loan to Chiacchio and that he was owed various credits, including credits for property taxes related to the HC Property. On June 3, 2019, the trial court in the Second Action dismissed all claims with prejudice, holding that they were barred by res judicata and the entire controversy doctrine because of the Mercer Action. The court in the Second Action also denied Mansour's motion for reconsideration.

Meanwhile, Mansour did not make either the September 1, 2016, or September 1, 2017, $24,000 annual payment under the Sales Contract. Chiacchio, through his attorney, made demands for those payments. In February

2018, after Mansour did not make the payments, Chiacchio notified Mansour that he considered him to be in default of the Sales Contract and that the Contract was "null and void." Accordingly, in March 2019, Chiacchio took possession of the HC Property.

In May 2019, Mansour filed this, the third action, in the Chancery court in Ocean County (the Present Action). In a verified complaint and order to show cause, Mansour sought to enjoin Chiacchio from occupying the HC Property and from interfering with his use of the property. The order to show cause was denied, and Chiacchio filed an answer and counterclaim seeking to quiet title to the HC Property.

Mansour then filed an amended complaint alleging that Chiacchio owed him various credits and debts. Specifically, Mansour sought judgments that (1) he had paid $155,000 towards the purchase price of the HC Property (count two); (2) he had paid $120,000 in taxes for the HC Property (count three); (3) he had made $145,000 in improvements to the HC Property (count four); (4) he had paid $27,795.84 in municipal taxes for the HC Property (count five); (5) Chiacchio owed him $50,000 on a note that had been executed in October 2007 (count six); (6) he had paid $35,000 in antique restorations to the HC Property

6

(count seven); and (7) he had lost $54,000 in income from the rental of the HC Property in the summer of 2019 (count eight).[1]

In March 2020, Chiacchio filed a motion for summary judgment seeking to dismiss all claims in the amended complaint and to grant his counterclaim to quiet title in the HC Property. After hearing oral argument, the Chancery court in the Present Action granted Chiacchio's motion for summary judgment. The court explained its reasons in a written opinion filed on May 8, 2020.

After reviewing the pleadings and orders in the Mercer Action and the Second Action, the court held that the entire controversy doctrine required Mansour to litigate all claims and defenses he had related to the parties' financial transactions in the Mercer Action. The court then found that Mansour and Chiacchio had litigated their various financial claims against each other in the Mercer Action. Accordingly, the court in the Present Action dismissed counts two, three, five, and six of Mansour's complaint, holding that they were barred by res judicata and the entire controversy doctrine. Consequently, Mansour's allegations concerning the $155,000 credit, the claims for credits of $120,000

---

[1] In his amended complaint, Mansour also asserted a claim against Elaine Chiacchio, who was Pasquale's former wife. Elaine was dismissed when discovery revealed that she had no ownership interest in the HC Property.

A-4399-19

and $27,795.84 for taxes paid, and the claim that he was owed $50,000 on a promissory note were dismissed.

The Chancery court then dismissed Mansour's remaining claims concerning the Sales Contract, holding that those claims were barred by the unambiguous language of the Sales Contract. In that regard, the court held that Mansour had breached the contract in failing to make the $24,000 annual payments in 2016 and 2017. The court rejected Mansour's claim that the acknowledgment of $155,000 in payments constituted a pre-payment of those annual payments. The Chancery court also rejected Mansour's claim for credit due to improvements on the HC Property, noting that the contract expressly provided that, if Mansour failed to close, all the improvements would be the sole property of Chiacchio.

Having dismissed all of Mansour's claims, the court determined that Chiacchio was entitled to summary judgment to quiet title and declare that Chiacchio was the sole and exclusive owner of the HC Property. Accordingly, on June 3, 2020, the court entered an order quieting title and recognizing Chiacchio to be the "sole and exclusive" owner of the HC Property.

Mansour moved for reconsideration. The Chancery court denied that motion in an order entered on July 10, 2020.

## II.

Mansour appeals, arguing that the Chancery court erred in granting summary judgment to Chiacchio and in denying Mansour's motion for reconsideration. He contends that he owns all or part of the HC Property or, alternatively, was entitled to recoup monies that he had paid towards the purchase of the HC Property. In addition, Mansour argues that there were disputed issues of material fact precluding summary judgment on the breach-of-contract claim. Lastly, Mansour asserts that even if the Chancery court properly ruled that he had breached the Sales Contract, he was entitled to a constructive trust on the property or recoupment from Chiacchio based on unjust enrichment or restitution.

Appellate courts review a grant of summary judgment employing the same standard as the trial court. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); Premier Physician Network, LLC v. Maro, 468 N.J. Super. 182, 192 (App. Div. 2021). Accordingly, we consider whether there are any disputed issues of material fact and, if not, whether the moving party is entitled to a judgment as a matter of law. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

In the Present Action, Mansour asserted two types of claims: (1) claims of ownership or entitlement to use the HC Property; and (2) claims of monies allegedly owed to him by Chiacchio or which he paid and, therefore, is owed an offset or recoupment. An analysis of the first group of claims involves an examination of the Sales Contract and its amendments. An analysis of the second group of claims involves an examination of the principles of res judicata and the entire controversy doctrine. We will first address the second group of claims.

A.   The Prior Litigations and the Application of Res Judicata and the Entire Controversy Doctrine.

The application of res judicata and the entire controversy doctrine are questions of law and, accordingly, we review those issues de novo. See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 386 (2007); Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012). In determining whether claims are precluded from re-litigation by a prior suit, res judicata and the entire controversy doctrine apply in tandem. McNeil v. Legis. Apportionment Comm'n of State, 177 N.J. 364, 395 (2003).

Under principles of res judicata, a "cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding."

Velasquez v. Franz, 123 N.J. 498, 505 (1991) (citing Roberts v. Goldner, 79 N.J. 82, 85 (1979)).  There are three basic elements for res judicata to apply:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991).]

The entire controversy doctrine mandates that "all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Cogdell by Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989).  Accordingly, not only are parties to a litigation barred from subsequently bringing claims that were litigated, they are likewise barred from litigating "all relevant matters that could have been so determined." Watkins, 124 N.J. at 412; see also R. 4:30A (stating failure to join claims as required by the entire controversy doctrine "shall result in the preclusion of the omitted claims"); Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (noting the entire controversy doctrine "seeks to impel litigants to consolidate their claims . . .

whenever possible" (quoting <u>Thornton v. Potamkin Chevrolet</u>, 94 N.J. 1, 5 (1983))).

We agree with the Chancery court that the claims Mansour alleged in counts two, three, five, and six of his amended complaint were barred by res judicata or the entire controversy doctrine. In those counts, Mansour raised claims concerning the $155,000 payment, a $120,000 payment of taxes, a $27,795.84 payment of municipal taxes, and an alleged $50,000 loan. An examination of the pleadings in the Mercer Action establish that all those claims were or could have been asserted in the Mercer Action and, therefore, are barred under res judicata and the entire controversy doctrine.

B.    Title to the HC Property.

The issues related to title to the HC Property were not decided in the Mercer Action or the Second Action. Those issues can be resolved as a matter of law by looking at the plain language of the Sales Contract and its amendments.

In interpreting a contract, we start with its plain language. <u>Barila v. Bd. of Educ. of Cliffside Park</u>, 241 N.J. 595, 615-16 (2020). Courts enforce contracts based on the intent of the parties, the contract's express terms, the surrounding circumstances, and the contract's purpose. <u>Ibid.</u> "[W]hen the intent

of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written . . . ." Id. at 616 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)).  Courts do not "make a better contract for either party." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999).  Instead, our task is to enforce a contract according to its terms, giving those terms "their plain and ordinary meaning."  GMAC Mortgage, LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

As an initial matter, we note that the plain language of the original Sales Contract required Mansour to pay a $1,000 use fee every month until closing. Each of the amendments to the Sales Contract stated in unambiguous terms that they were made "on the same terms and conditions as contained in the original agreement," aside from the specific changes they described.  The last modification, made in September 2014, required Mansour to pay $24,000 annually until closing.  The amendments did not end Mansour's obligation to make periodic payments before closing, and Mansour did not make the annual $24,000 payments in either 2016 or 2017.  Accordingly, Mansour defaulted on the agreement by failing to make the payments when due.

In count four, Mansour claimed $145,000 for improvements he made to the HC Property while he was in possession.  The Sales Contract expressly

addressed improvements, stating that "[i]f the Buyer fails to close title . . . all improvements shall be the sole property of the Seller."  Mansour did not close title; rather, he defaulted on the Sales Contract.  Accordingly, the plain and unambiguous terms of the contract establish that any improvements are now the sole property of Chiacchio.

In count seven, Mansour claimed $35,000 to restore a piece of antique furniture that Chiacchio had repainted when he took possession of the home in 2019.  Chiacchio provided Mansour with notice that he needed to remove his personal items.  Specifically, Chiacchio's attorney sent a letter to Mansour on March 8, 2019, notifying him that

> any contract interest you may have had [in the HC Property] has been terminated . . . .  [Y]ou may have left some personal items in this property . . . [Chiacchio will] make arrangements . . . for you to retrieve these items within the next 30 days if contacted by you. . . . [I]n the event that you do not retrieve the property within the 30 days we will assume that you abandon the same and you should have no further contact at the property.

Mansour did not remove his personal items, including the piece of antique furniture, after receiving notice.  Further, he did not remove his belongings after the Chancery court denied his request, in June 2019, to enjoin Chiacchio from occupying the HC Property.

14

In count eight, Mansour claimed $54,000 for the loss of rental income for the 2019 rental season. Because he had not made the required annual payments due after 2014, Mansour was in default by that time.

Accordingly, we agree with the trial court's determination that counts four, seven, and eight failed to raise an issue of material fact that would preclude summary judgment.

### III.

In summary, we discern no error in the trial court's decision granting summary judgment in favor of defendant. Further, there is no error in the court's order stating that Pasquale Chiacchio has sole and exclusive ownership of the HC Property.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4399-19