IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1867.

---

### THE CENTRAL RAILROAD COMPANY OF NEW JERSEY ADS. THE STATE.

1. On the trial of an indictment for obstructing a public highway, it is sufficient *prima facie* proof of the existence of such highway, to show an open and public user of the same.
2. A railroad company has no right to alter the grade of a public highway, which crosses their track, by virtue of the act of the twenty-eighth of March, 1862.
3. Where the charter of a railroad company directs the company to keep sufficient passages over or under their railroad, where any public road crosses the same, so that carriages, &c., on the said road shall not be impeded thereby, it is lawful for such company, having laid a public road over their track, subsequently to lay the same through a tunnel under such track, whenever the safety or convenience of the public requires such change.

---

This was an indictment for obstructing a public highway. The case was tried before the Chief Justice, at the Warren Oyer and Terminer, and a formal verdict taken, by consent, in favor of the state, the questions of law being reserved.

The charge in the indictment was, that the defendant

220

" did cut, dig, and excavate, in and across the said Stockton street, the same being such public and common highway, as aforesaid, a wide, long, and deep hole, ditch, and pit," &c.

For the state, *J. F. Dumont* and *J. F. Randolph*.

For the defendants, *J. G. Shipman* and *B. Williamson*.

The opinion of the court was delivered by

BEASLEY, C. J. On the trial of this case, before the Oyer and Terminer, the state, in order to prove the existence of the highway which, it was alleged, had been obstructed, relied on the fact of a user of such highway by the public. There was nothing to indicate that it had been laid out in the mode appointed by the general law of the state concerning roads. The witnesses who were examined testified, in substance, that the highway in question was a street in Phillipsburgh; that it was the principal thoroughfare for that section of the town in which it lay, accommodating a population of from twelve to fifteen hundred; that, at intervals, dwellinghouses have been erected upon it, and that, to their knowledge, it had been thus used for over nine years. Upon the case thus made, the state rested; and the first objection raised in behalf of the defendant, is that such proof was insufficient.

This view, we think, cannot be sanctioned. The facts proved, and which are above stated, exhibited a *prima facie* case, from which a jury had a right to infer, in the absence of explanatory evidence, a dedication of this highway to the public. The principle, now universally acknowledged, is that a dedication is purely a question of intention on the part of the owner of the derelict land. Time is no part of the essence of the act; it is a circumstance merely tending to show the design with which the property was thrown open to common use. Moreover, sometimes the law will conclusively presume the intention to dedicate to exist, as where the owner so acts as to raise in others a well founded belief

that he intends to donate to the public the easement, and such persons change their situation in consequence of such belief. This result proceeds from the doctrine of estoppel. And in the present case, if it had been shown that the owner of the soil, constituting the road-bed in question, had stood by, and without signifying a contrary purpose, had witnessed the public in the absolute enjoyment of this privilege, and property being accommodated to it, for this long period of time, no one, it is believed, would pretend that it would have been competent for him to reclaim the land, to the injury of those whom he had deceived by his conduct. But in the present case, the difficulty suggested was, that it did not appear who the land-owner was, and that, until this was proved, it could not be known whether he was in a condition or of an ability to dedicate. But we do not think proof of this fact is indispensable. Primarily, the reasonable presumption is, when land is found subjected to an open and notorious use, that it has become so by competent permission. The disability of the person making the dereliction should be regarded as matter of defence. " It must frequently occur," says Justice Coleridge, in *Regina* v. *Petrie*, 30 *E. L. & Eq.* 210, " that the party who indicts for non-repair, or obstruction of a highway, may be in entire ignorance of its history. But he can show an user of it, and so make out a *prima facie* case of highway. I do not say such a case cannot be answered, but it is for those who allege anything to prevent the ordinary presumption from applying, to show it." In this case the point now considered was directly presented, and all the judges concurred in adopting the highly sensible rule that it was sufficient, in laying the foundation for a verdict, to show the public in the unquestioned possession of the easement. The proofs, therefore, in this respect were not defective in the present case.

The grounds of the above conclusion, we also think, afford a satisfactory answer to the insistment, that as to that part of the alleged street which crosses the track of the railroad of the defendant, no dedication could be implied. It was

urged that the railroad, during all the period in question, was in the full use of their track, and consequently there could be no presumption that they had abandoned any part of it to the public. This deduction would be incontestable, provided the user alluded to had been repugnant or in any wise inconsistent. But such was not the case, and, there-fore, the argument loses all force. There are a number of decisions which sustain the general doctrine, that it is not inconsistent with the effectual dedication of land, that the owner should continue to make any and all uses of the same which do not interfere with the uses for which it is dedicated. *Wash. on Eas.* 137. The fact, therefore, that the defendants continued to run their trains over the section of land in question does not, of necessity, and as a conclusion of law, repel a possible inference of the appropriation of such sec-tion to a coincident user by the public. We do not think the case could have been properly withheld from the jury for this reason.

The next matter which formed one of the topics of argu-ment, related to the extent of the power of the defendants to interfere with the public highways which intersect their railroad. It was shown that the street in question had for-merly crossed over the surface of the track; the defendants altered its position in this respect, and passed it through a tunnel under such track. On the part of the state, it was denied that the company had the competency to make this alteration, and this denial formed the substantial foundation of this indictment.

To sustain themselves in this particular, we are referred, by the defendants, to the supplement concerning roads, passed March 28th, 1862. *Pamph. L.* 326. But after a careful examination of this act, we are not able to perceive its applicability in the present instance. The obvious pur-pose of this law was to authorize railroad companies in crossing public highways to transfer such highways to other places, whenever it became necessary so to do, in order to make them pass either over or under the railroad, at an easy and

suitable grade. The language of the statute is, " that any rail-road company," &c., " may, &c., alter the location of said high-way at their own expense." By an alteration of location, we understand a change of place to be meant; the expression is in-appropriate to a mere change of grade; besides, on this latter supposition, the last clause of the section, declaring that the alterations which it authorizes, " are," in its own language, " hereby confirmed and made valid, as if the same had been made by surveyors of the highways, according to law," has no reasonable signification. Surveyors of the highways do not make perpendicular alterations of high-ways. This statute, therefore, we regard as altogether foreign to the facts of this case.

But again, on this point, the defendants insist that, by force of the ninth section of their original act of incorpora-tion, they were possessed of the power to make the alteration in question. *Pamph. L. of* 1847, *p.* 133. These are the words of the clause : " That it shall be the duty of the said company to construct and keep in repair good and sufficient bridges or passages over or under the said railroad or roads, where any public or other road shall cross the same, so that the passage of carriages, horses, and cattle, on the said road, shall not be impeded thereby," &c. This provision, it will be perceived, imposes a duty on the company in favor of the public. It is to be taken most strongly against the corpora-tion, but it is to receive a reasonable construction. It is a continuing duty to which the company is made subject, which, in its performance, must be measured by circum-stances. Thus, a bridge or a passage-way, which at one time would be adequate to the public accomodation, might at a subsequent period, from an increase of business or popula-tion, be totally inadequate, and consequently a provision which at one juncture would be a discharge of the duty, would at another, amount to its infraction. Suppose a public street in a town to have been originally laid by the com-pany over the surface of their track, and that by reason of the growth of their business, at that locality, their trains

should pass in such quick succession as to render such street almost impassable; under these circumstances, could it be pretended that the company could discharge themselves from the obligation which the section in question imposes, except by passing the street thus obstructed under their road, so as to restore it to public use. The duty prescribed is, to keep at all times, and under all circumstances, the public highways, at the point where they cross the railroad, in a condition fit for safe and convenient use. In order to accomplish this end, the power to alter the grade of the road as public emergencies require, so as to pass it, if necessary, under the track, must reside in the corporation. The opposite conclusion would be alike injurious to the company and to the community. We think, therefore, that the defendants cannot be held wrong-doers, merely because they changed the grade of the road, in the present instance, provided such change was necessary for the convenience or safety of the public. If such act has been done unreasonably, and without any proper cause, the case would be different. So, also, if the passage-way, which has been constructed, is insufficient, or is not kept in good condition, the defendants may, undoubtedly, be held criminally responsible. But it is obvious the present indictment is not framed in view of such delinquencies.

Let the Court of Oyer and Terminer be advised to set aside the verdict which has been taken, and to grant a new trial.

CITED in *Wood* v. *Hurd*, 5 *Vroom* 91.