**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1819-22

IPPOLITO CORPORATION,

    Plaintiff-Respondent,

v.

BOROUGH OF POINT
PLEASANT BEACH ZONING
BOARD OF ADJUSTMENT,

    Defendant-Appellant.

_____

Argued June 5, 2024 — Decided December 5, 2024

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1687-21.

Peter J. Van Dyke argued the cause for appellant (Kelaher, Van Dyke & Moriarty, attorneys; Peter J. Van Dyke, on the brief).

John J. Jackson, III, argued the cause for respondent (John J. Jackson III & Associates, Attorneys at Law, LLC, attorneys; John J. Jackson III, on the brief).

The opinion of the court was delivered by

WALCOTT-HENDERSON, J.S.C. (temporarily assigned).

In this action to quiet title to a tract of land on Point Pleasant Beach, defendant Borough of Point Pleasant Beach (Borough) appeals from a January 13, 2023 order granting summary judgment to plaintiff Ippolito Corporation, directing the Borough to amend its tax map to remove any reference to the thirty-foot boardwalk right-of-way over and across plaintiff's property. The Borough argues the court erred in concluding that ownership of the property at issue had previously been adjudicated in Murphy v. Borough of Point Pleasant Beach, 123 N.J.L. 88 (Super. Ct. 1939), aff'd, 124 N.J.L. 565 (E. & A. 1940),[1] and, thus, the doctrine of res judicata applies to bar the Borough's current claim of a boardwalk right-of-way. Unpersuaded by the Borough's arguments, we affirm.

I.

There is no dispute that plaintiff is the current owner of beachfront property, more specifically described on the Borough's current tax map as Block 17.01, Lots 5, 6, 47 and 48 and Block 17.02, Lots 2.01 and 3 (the property). The parties agree lots 3 and 2.01 of Block 17.02 on the current tax map abut the Atlantic Ocean and are separated from Lots 5 and 6 of Block 17.01 by a thirty-

---

[1] Prior to the enactment of the 1947 Constitution, the Court of Errors and Appeals was the highest court in New Jersey and the Supreme Court was an intermediary appellate court.

foot-wide "boardwalk right[-]of[-]way," which runs parallel to Ocean Avenue and the coastline.

In 1993, plaintiff purchased the property from Capri Development Co., Inc. The property was previously owned by Edward H. Murphy and then his daughters, Nina and Isabel Murphy (the Murphys). The members of the Murphy family had owned the property since 1895 when Edward[2] acquired the property from the Point Pleasant Land Company. During the many decades of Murphy family ownership, the property consisted of bath houses on Point Pleasant Beach and later the Driftwood Motel.

The record includes various tax and zoning maps depicting plaintiff's property dating back to 1878. The earliest map in the record depicting the original plan of the lots currently owned by plaintiff is recorded in the Ocean County Clerk's Office as map A-166, filed on August 6, 1878. According to the Borough, map A-166 does not show the area adjacent to the ocean separated into lots; rather, it shows a sanded area designated by "stippling marks." The Borough does not dispute that four lots west of the area in dispute were originally designated as lots 41, 42, 43, and 44.

---

[2] As the Murphy family members share the same surname, we refer to them by their given names, intending no disrespect by our informality.

According to the Borough, the subject area is also set forth on map B-40, filed on August 17, 1891, which "shows an area marked off on the [oceanside] of lots 42 and 44 (now designated as lots 5 and 6)" and includes an unnamed strip of land between the two western-most lots and the eastern-most land abutting the Atlantic Ocean. Map B-40 differs from map A-166 in that map B-40 has two parallel lines between the eastern-most lots (3 and 2.01) and the beach area. These two parallel lines coincide with the boardwalk right-of-way designated on the current tax map.

Also, according to the Borough, map A-147, filed in 1916, "show[s] an area south of the subject area, [and] confirms that the area [oceanside] of the lots east of Ocean Avenue is reserved for [a] boardwalk" and map F-212, filed in 1934, depicts "an area to the south of the subject area, [and] also confirms the existence of the area reserved for [a] boardwalk." In addition, the current tax map and the Borough zoning map depict the right-of-way area at issue.

The parties do not dispute that the Murphys had granted the Borough a license to erect and maintain a boardwalk or promenade along the beachfront on

4

their property for a term beginning May 18, 1896, and ending June 1, 1901.[3] And, according to the Borough Clerk, the Murphys had periodically renewed the Borough's license to use the boardwalk until 1930.

Plaintiff points to the decision in Murphy as dispositive of the issue raised in its complaint and provides the trial court record on appeal. See 123 N.J.L. at 88-89. The Borough does not dispute the holding in Murphy; however, the Borough does not agree that the holding in Murphy addresses the issue raised in plaintiff's complaint, contending Murphy "did not address the area in question," specifically the area reserved for a boardwalk right-of-way.

In 1938, the Murphys filed a complaint seeking to eject the Borough from a portion of their beachfront property described as "about [100] feet in width adjacent to the high-water mark of the Atlantic ocean . . . ." The Murphys' complaint described the subject tract of land in dispute as:

> All that tract or parcel of land and premises situate[d] in the Borough of Point Pleasant Beach, County of Ocean and State of New Jersey, comprising beach and upland, and included within the following boundaries:
>
> Bounded on the easterly side by the Atlantic Ocean; bounded on the northerly side by lands formerly owned

---

[3] A 1937 letter to the Borough from the Murphys' attorney, which was admitted in evidence at trial, acknowledged that "license or privilege to the Borough was from time to time extended by renewals of the lease . . . ."

by Rev. Charles E. Knox (said Knox line intersects the easterly side of Ocean Avenue as shown on "Plan of Lots of Point Pleasant Land Company," filed in the Ocean County Clerk's Office, August 6, 1878, at a point distant 131.39 feet northwardly of the northerly side line of Trenton Avenue as shown on said map, measured along the easterly side line of said Ocean Avenue, and extends thence from the easterly side line of Ocean Avenue on a course south 86 [degrees] 57½ [feet] east out to the high[-]water mark of the Atlantic Ocean); bounded on the westerly side by a line parallel with the most easterly side line of Ocean Avenue, as shown on said map, and which last mentioned boundary line is distant, measured along the side lines of Trenton, Forman, Atlantic, New Jersey, New York, Philadelphia, and Washington Avenues, as shown on said map, 250 feet eastwardly from the most easterly side line of the said Ocean Avenue; and bounded on the south by lands formerly owned by Charles W. Maxson (said Maxson's line intersects the easterly side line of Ocean Avenue, as shown on said map, at a point 1321.9 feet southwardly of the southerly side line of Washington Avenue as shown on said map, said distance being measured along the easterly side of said Ocean Avenue . . . south 63 [degrees] 30 [feet] east out to the high[-]water line of the Atlantic Ocean).

The Borough sought "an allowance and set-off for permanent improvements consisting of a boardwalk of an approximate width of [t]wenty (20) feet and extending the entire length of the premises as described in the [c]omplaint, and a lighting system extending along the entire westerly line of the said premises."

Approximately three months after the filing of their complaint, the

6

Murphys filed a demand for a Bill of Particulars from the Borough.[4]  In response, the Borough provided three maps, A-166, A-40, and B-40.  On July 18, 1938, Judge Percy Camp excluded map B-40 from evidence because it was unsigned by the County Clerk and determined "its legality [was] therefore in question." The Borough claimed the maps showed that Edward had dedicated the property as described in plaintiff's complaint to the Borough and the public.  The Borough further claimed that the dedication of the premises described in the complaint had been established by:

> the acts, declarations and admissions of Edward . . . particularly his statement made at times to individuals and to the public, of such dedication and the intention to dedicate; and by the making of sales of lots by reference to the filed maps particularly referred to in paragraphs 1, 2 and 3 above, . . . and by reference to the streets and lot numbers delineated thereon to various persons whose names and the number of the lots so purchased by each are to this defendant unknown; but are particularly set forth and mentioned in the books of the said Edward . . . which are now in possession of the plaintiff in this cause and further by the sales of lots by reference to said maps and by reference to the streets and lot numbers to the persons and by the deeds appearing of record in the office of the Clerk of Ocean County . . . .

---

[4]  A demand for a Bill of Particulars is a list of written questions from one party to another requesting details about a party's claims or defenses.  *Bill of Particulars*, LEGAL INFORMATION INSTITUTE, https://www.law.cornell.edu/wex/bill_of_particulars (last visited Nov. 8, 2024).

At the conclusion of discovery, a four-day jury trial ensued before Judge Camp. According to the trial record, Nina testified that her father Edward — then deceased — had acquired the property in 1895 from the Point Pleasant Land Company and began operating a beachfront bathing house on the site. Nina also testified that she and her sister Isabel had inherited the property, which included the beach, soil and ocean access as designated by poles the Murphys installed.

She further testified that she did not allow people who did not pay for access to the beach to "pass over [their] tract, to go in the ocean . . . ." except that certain charitable children's organizations were allowed free access to the beach. In response to a question posed by counsel regarding whether she prevented people from going on the beach unless they paid, Nina responded "[y]es, or my lessee." Nina also testified that in addition to the bath houses, her mother had put up "two little houses" on the beach and poles with ropes that extended into the water "to protect the bathers." She also testified that they employed lifeguards and policed and cleaned the beach.

Following the close of the evidence at trial, the court instructed the jury to decide "whether or not the lands in question have been dedicated to the public." The jury returned a verdict in favor of the Murphys, stating "[w]e the [j]ury do find that the plaintiffs do recover of the defendant possession of the

premises mentioned and described in the complaint. Whereupon [j]udgment final is entered in favor of the [p]laintiffs and against the defendant."

The Borough appealed the jury verdict and subsequent judgment entered by the court in favor of the Murphys. Before the 1939 Supreme Court, the Borough argued the trial court had erred by: denying its motion for a directed verdict when the evidence at trial had established, as a matter of law, that there had been a dedication of land to public use and an acceptance of such dedication by the Borough; permitting a question to be asked of a witness concerning the existence of certain bulkheads; and permitting certain minutes of the Borough council to be read into evidence. Murphy, 123 N.J.L. at 91.

The court rejected the Borough's arguments and affirmed the jury's verdict and judgment in favor of the Murphys. Id. at 90-91. In its written opinion, the court concluded that the trial record adequately supported a finding that the Murphys had "exercised the jurisdiction of owners of the lands in question" by "licens[ing] the erection of the boardwalk; maintain[ing] a bathing beach, with poles and ropes; employ[ing] life guards; polic[ing] and clean[ing] the beach; erect[ing] bulkheads; [and] grant[ing] permission to a charitable organization to use a section of the beach for bathing by children and erect[ing] bath houses for their use." Id. at 89-90.

9

The court also found persuasive that the Borough had previously acknowledged the Murphys' authority over the premises by disclaiming ownership or authority over an area of the beach after a neighbor complained about old wire that was permitted to remain on the beach in front of her home. In that case, the Borough had denied responsibility for the condition of the beach because it was the Murphys' land. Id. at 90. The court further stated, "we find nothing about the maps which conclusively indicates a dedication." Id. at 90-91. The beach land was not designated as "park land or public land in any way." Ibid. The court compared the beach to other examples of public land, all of which were clearly designated as public parks "by the drawing on the maps of trees, paths, a fountain and a lake." Id. at 90.

Thereafter, the Borough appealed to the Court of Errors and Appeals, which "affirmed, for the reasons expressed in the opinion delivered per curiam in the Supreme Court." Murphy v. Borough of Point Pleasant Beach, 124 N.J.L. 565, 566 (E. & A. 1940).

Sometime in the mid-twentieth century, the Murphys constructed on the property the Driftwood Motel, which they operated for the next several decades. In 1993, plaintiff bought the property. Sometime before plaintiff bought the

property, the beach land was divided into the individual lots and renumbered as they are today.[5]

The deed plaintiff acquired with the property in 1993 contained the following provision concerning a boardwalk right-of-way:

> The above description includes the area of the [thirty-] foot wide boardwalk. This conveyance includes all of the right, title and interest in the boardwalk area, (whatever the same shall be); but any covenants contained in this conveyance or in the affidavit of title that may be in conjunction with this conveyance, shall not pertained to the boardwalk area, and the [thirty-] foot wide boardwalk right[-]of[-]way is subject to the rights of the public to traverse the same.

In 2014, plaintiff's neighbors sued the Borough and plaintiff, alleging the Borough had allowed the Driftwood Motel to impermissibly expand, without municipal approval and without appropriate variance relief, thereby violating the Borough's land-use and dune-protection ordinances. The parties consented to binding arbitration to resolve the dispute, and the arbitrator issued a written decision, which in part addressed the Borough's claim to a boardwalk right-of-way over a section of plaintiff's property. The arbitrator stated:

> As shown on the [current] tax map of Point Pleasant Beach, there exists a [thirty-]foot right-of-way for a boardwalk which essentially parallels the coastline and

---

[5] The record does not include any proof showing when the area in question was subdivided.

11                                                          A-1819-22

Ocean Avenue. The background, or derivation, of this right-of-way exists somewhere in history but cannot be substantiated. There is no boardwalk, nor in the memory of man has there been one near these properties as opposed to properties farther north. Moreover, Point Pleasant Beach has not prevented or inhibited anyone from constructing in the so-called right-of-way on properties north or south of the subject property. Thus, the right-of-way, if any, has been abandoned due to municipal action or inaction.

In 2018, plaintiff sought approval to build a multi-family dwelling to replace the Driftwood Motel. The Zoning Board denied plaintiff's application, citing the Borough's tax map that showed part of the property had a boardwalk right-of-way that provided public access to the beach.[6]

Plaintiff filed a complaint in lieu of prerogative writs appealing the Zoning Board's decision. Plaintiff sought to enforce the Murphy decision and compel the Borough to remove the boardwalk right-of-way from the Borough's tax map and declare the boardwalk right-of-way privately owned.

On January 28, 2021, the court reversed and remanded the matter to the Zoning Board, finding its denial of plaintiff's application was inadequate. Thereafter, the Zoning Board issued a second resolution denying plaintiff's application.

---

[6] Plaintiff's Zoning Board applications and subsequent denials are not part of the record on appeal.

On June 28, 2021, plaintiff filed another complaint in lieu of prerogative writs to quiet title and for damages against the Zoning Board and the Borough in Law Division. In the complaint plaintiff alleged that the Borough's tax map continues to inaccurately show a strip of land between lots 3 and 2.01 in block 17.02 and lots 5 and 6 in block 17.01, referred to as a boardwalk right-of-way. Plaintiff sought to "enforce the judicial determination as to the ownership of the strip of property in question and to enforce the binding arbitration award . . . and to compel the [Zoning] Board and Borough to acknowledge [p]laintiff's ownership of same."[7]

On November 7, 2022, plaintiff moved for summary judgment on its claims related to the strip of land identified on the Borough tax map as a boardwalk right-of-way and for a determination of whether the designation as a public right-of-way as claimed by the Borough is "erroneous."

In its opposition to plaintiff's motion for summary judgment, the Borough maintained the area in question is not the same as the property at issue in the 1938 lawsuit and, therefore, the holding in Murphy is not entitled to res judicata.

---

[7] On June 30, 2021, plaintiff amended its complaint to add a third count against the Zoning Board for failing "to properly follow the instructions on remand, and the resolution dated May 20, 2021 fails to adequately addres[s] the deficiencies cited by the [c]ourt."

More particularly, the Borough argued the court's opinion in <u>Murphy</u> did not address the existence of lots 3 and 2.01 because map A-166, relied on in the <u>Murphy</u> proceedings, did not designate those lots.

At oral argument, defendant agreed the <u>Murphy</u> case "definitely dealt with a 100-foot piece of property east of the two lots" bordering Ocean Avenue, as well as the "contiguous 1300-foot piece of property, approximately 100-[feet] wide that was on the beach." Defendant conceded that <u>Murphy</u> "obviously did deal with the boardwalk, but . . . much of the testimony in <u>Murphy</u> dealt with the use of the entire beach and not just this use of this 'boardwalk right[-]of[-]way.'" Defendant argued that because lots 3 and 2.01 did not exist at the time of the <u>Murphy</u> decision, the decision did not deal with the boardwalk.

Following oral argument on plaintiff's summary-judgment motion, Judge Marlene Ford issued an oral decision granting summary judgment in plaintiff's favor, stating "the property in question is a motel that fronts on the Atlantic Ocean and Point Pleasant Beach," consisting of lots 3, 2.01, 5, 6, 47, 48, on blocks 17.01 and 17.02, and concluding that these same lots had originally been created "by virtue of a filed map from 1878 [map A-166]" and encompass "the same property over which the [d]efendant Borough is currently claiming a public right[-]of[-]way."

Also in her decision, Judge Ford reviewed the history of the beachfront property and the relevant Borough maps, including map A-166 filed in 1878, which showed the lots as they existed in 1878. Judge Ford noted that map A-166 did not show any lines that coincided with what the Borough now claims to be the boardwalk right-of-way, and acknowledged that in 1891, map B-40 depicted parallel lines that "we presumed to be the boardwalk right[-]of[-]way, although there was no [other] notation on that map that it was a boardwalk right[-]of[-]way." Judge Ford noted that map B-40 was excluded from evidence during the 1938 trial because it lacked the signature for the County Clerk and was therefore deemed inadmissible and that the decision of the trial court was entitled to deference.

Judge Ford next addressed the undisputed evidence the Murphys had previously leased a boardwalk right-of-way to the Borough and that the area had been destroyed by a storm prior to the 1938 trial. Judge Ford stated, "the ultimate decision at the trial level was that the Borough's claims of a right to this area were rejected . . . [A]nd that the action in ejectment was ruled in favor of the property owners." Judge Ford noted the matter was appealed, and the decision was affirmed by the Court of Errors and Appeals in 1940.

In turning to address plaintiff's summary-judgment motion more directly,

Judge Ford concluded that res judicata applied, citing the Murphy decision; "that there was no dedication of [the Murphys'] land to the public use as a [thirty]-foot recreational easement for boardwalk purposes or anything else, and certainly not as to the surrounding properties." Judge Ford explained there was likely confusion over the thirty-foot-wide strip of property depicted on the current tax map and map B-40, as a boardwalk right-of-way because that map had been retained by the Borough and at some point incorrectly relied on in adopting the official tax map. Judge Ford further found that "it didn't really have any practical significance . . . because the parties just acted as such, and there was no change" until the Driftwood Motel constructed hardscaping in that area, which prompted plaintiff's neighbors to file a separate lawsuit against them for failing to comply with local zoning ordinances in 2014, referring to the 2014 lawsuit that was resolved in binding arbitration in which the arbitrator stated "the right-of-way, if any, has been abandoned due to municipal action or inaction."

Judge Ford further stated there was "substantial unrefuted evidence" in the record that the area constituting the boardwalk right-of-way is in fact the same land at issue in the Murphy case and the land was intended to be contiguous to the existing lots on which the Driftwood Motel was then located. Judge Ford

16

also concluded there had been no evidence presented to the <u>Murphy</u> court that defendant had "ever moved to . . . seek a dedication of that land," which she found significant because the Court of Errors and Appeals had held that defendant failed to proffer conclusive proof of dedication.

Judge Ford discussed the elements of the doctrine of res judicata and concluded that all of the elements had been met. Judge Ford found as a matter of law "the claims of the Borough may not withstand a motion for summary judgment under these circumstances" and entered judgment in plaintiff's favor. The Borough appealed.

On appeal, the Borough raised the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED UPON ITS RULING THAT <u>MURPHY V. [BOROUGH OF] POINT PLEASANT BEACH</u> CONSTITUTED RES JUDICATA IN THE PRESENT MATTER
>
> POINT II
>
> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED UPON ITS RULING THAT THE [2014] ARBITRATION DEC[I]SION CONSTITUTED RES JUDICATA IN THE PRESENT MATTER

17 <span>A-1819-22</span>

II.

Appellate courts review a grant of summary judgment de novo, employing the same standard as the trial court.  Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); Premier Physician Network, LLC v. Maro, 468 N.J. Super. 182, 192 (App. Div. 2021).  That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"Res judicata prevents relitigation of a controversy between the parties." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318, (App. Div. 2002).  "The rationale underlying res judicata recognizes that fairness to the defendant and sound judicial administration require a definite end to litigation."

Velasquez v. Franz, 123 N.J. 498, 505 (1991) (citing Restatement (Second) of Judgments § 19 cmt. a (Am. L. Inst. 1982)).

For res judicata to apply, there must be "(1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Brookshire Equities, 346 N.J. Super. at 318. The application of res judicata requires "substantially similar or identical causes of action and issues, parties, and relief sought." Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012). The test for the identity of a cause of action "is not simple." Culver v. Ins. Co. of N. Am., 115 N.J. 451, 461 (1989). To decide whether two causes of action are the same, the court is to determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.
>
> [Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606-07 (2015) (internal quotations omitted).]

Application of the doctrine is "a question of law 'to be determined by a judge in the second proceeding after weighing the appropriate factors bearing upon the issue.'" Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173

19

(App. Div. 2000) (quoting <u>Colucci v. Thomas Nicol Asphalt Co.</u>, 194 N.J. Super. 510, 518 (App. Div. 1984)). Our Supreme Court in <u>Culver</u> found a "high degree of similarity" between two lawsuits because the acts complained of were the same, the conduct at issue was the same, the material facts were the same and would require "virtually the same evidence" to establish the conduct at issue, and a similar demand for relief is presented in each action. 115 N.J. at 462.

Applying a de novo standard of review, we reject the Borough's argument that Judge Ford erred in granting summary judgment to plaintiff based on her finding the doctrine of res judicata applied to bar relitigation of the issues. The parties do not dispute the entry of a final judgment by a court of competent jurisdiction and that the parties in the 1938 lawsuit are the same as those in the present matter — the Borough and plaintiff, the Murphys' successors in title. The Borough however disputes the following: whether the issue decided by the <u>Murphy</u> court is the same issue presented; whether the property at issue in the 1939 decision is the same parcel of land at issue here; and whether the identity of the cause of action addressed in <u>Murphy</u> is the same.

More particularly, as to whether the property at issue in the 1938 trial is the same property as disputed here, the Borough argues that in 1938 the area addressed was described as 100 feet in width from the edge of the Murphys'

property to the high-water mark. The Borough maintains the <u>Murphy</u> court "never determined the issue of the existence of a boardwalk right-of-way located between the two western-most lots and the [oceanfront] lot." Instead, according to the Borough, "the <u>Murphy</u> trial dealt with and determined that the entirety of the beach area had not been dedicated to public use by the filing in 1878 of [m]ap A-166." As the Borough states, "[t]he area of concern in this case is [thirty]-feet wide and exists west of the lots adjacent to the highwater mark, now designated as lots 3 and 2.01."

The Borough also argues the creation of oceanfront lots at some unknown point in time after the court's decision in <u>Murphy</u> caused lots east of Ocean Avenue to be landlocked, requiring access to oceanfront lots (3 and 2.01) along the high-water mark or via boat if no right-of-way exists. And that "a right-of-way, such as a boardwalk easement, could provide a viable means of egress to those [oceanfront] lots."

The Borough also asserts the motion court further erred in granting summary judgment based on the 2014 arbitration decision, which the Borough argues addressed "the enforcement of permits, not the existence of a right-of-way" and was therefore inapplicable here.

Plaintiff contends the doctrine of res judicata applies because "defendant is the exact same party" now and in the 1938 and 2014 lawsuits, "[plaintiff] is the successor to [the] Murphy[s] . . . [t]he exact same piece of land is in question. [And] [t]he exact same arguments have been litigated." Plaintiff disputes the Borough's contention that the boardwalk right-of-way claimed today is different because "it is a [thirty]-foot strip of land between the eastern edge of the 250-foot double lots on Ocean Avenue and the Atlantic," rather than the 100 feet of land at issue in the 1938 trial. Plaintiff maintains "the 'beach' area litigated was the land that abutted the 'easterly line of the lots on Ocean Avenue as shown on . . . [map A-166] filed in the office of the Clerk of the County of Ocean on August 6, []1878.'" Plaintiff further argues "[i]f the area of [d]efendant-claimed boardwalk right-of-way adjoins the lots on the eastern side of Ocean Avenue and is [thirty feet] east of that, then it follows that the claimed boardwalk right-of-way covers a [thirty]-foot swath of the landward portion of the original Murphy beach lot." And, Judge Ford's determination that this is the same land at issue in the present case is supported by the record and, therefore, the doctrine of res judicata applies here.

Judge Ford further found the 1938 ruling, which was upheld on appeal, addressed plaintiff's rights to the same land plaintiff had acquired in 1993 and

22

concluded the Murphy decision settled the issue concerning the strip of property in question. Judge Ford found "that there was no dedication of land to the public use as a [thirty]-foot recreational easement for boardwalk purposes or anything else." We agree and affirm for substantially the same reasons set forth by Judge Ford in her well-reasoned oral decision. We add the following comments.

To address this question whether the court previously determined there was no boardwalk right-of-way or access over plaintiff's property for public purposes, and whether that decision precludes relitigating, we review the record de novo to first identify the precise location of the lots addressed in Murphy. See Walker, 425 N.J. Super. at 151.

The Borough argues that several maps, including the current tax map, master plan, and zoning map, show the "right[-]of[-]way area," and maps A-147, filed in 1916, and F-212, filed in 1934, show south of the subject area with an "area reserved for [the] boardwalk."[8] The Borough concedes "[t]he [c]ourt in Murphy dealt with a 100-foot wide area adjacent to the highwater mark" but argues that lots 3 and 2.01, "the eastern[-]most [oceanfront] lots[,] were not

---

[8] Maps A-147 and F-212, dated 1916 and 1934 respectively, show an area "reserved for boardwalk" and pre-date the court's decision in Murphy.

discussed or dealt with in the Murphy decision as no such designation existed at the time," explaining that lots 3 and 2.01 were not designated lots in 1938.

Plaintiff does not dispute that at some time in the past, the lots as shown on map A-166 were subdivided and are currently shown on the zoning map as lots 3 and 2.01. However, plaintiff asserts the "subdivisions of Murphy's original beach lot since 1938 are of no consequence as there is no evidence of a subsequent dedication" of its property. Plaintiff next points to the evidence adduced in the 1938 Murphy trial showing the Murphys owned "the entirety of the lands east of the lots on Ocean Avenue," to the Atlantic Ocean, including the area from which the Borough had been ejected in Murphy.

Based on our de novo review of this record, we reject the Borough's contention that the Murphy court did not address the same property on which the Borough now claims a boardwalk right-of-way exists and conclude that the boardwalk right-of-way is within the 100-foot-wide area addressed in Murphy.

The existing tax map depicts plaintiff's property between Ocean Avenue to the Atlantic Ocean — represented by Lots 47, 48, 5, and 6, on Block 17.01 and Lots 3 and 2.01 on Block 17.02. This is not disputed by the parties. By comparison, map A-166 from 1878 depicts the same general area owned by plaintiff predecessors in interest, between Ocean Avenue and the Atlantic

24

Ocean. In Murphy, the court relied on map A-166, which was admitted in evidence at the trial, and concluded that "we find nothing about the maps which conclusively indicated a dedication," "[t]he beach tract was not designated as a park land or public land in any way," and the beach tract was "unmarked." 123 N.J.L. at 90. Based on map A-166 and the current tax map,[9] we agree the beachfront lots 3 and 2.01 are not included on map A-166; however, neither party offers any proof as to when the beachfront lots were divided, only that "[a]t some point in time the contiguous whole depicted as stippling on A-166 was divided into lots."

We remain unpersuaded by the Borough's arguments because the Borough offers no legal support for its contention that by creating oceanfront lots, including lots 3 and 2.01 on its property, the prior decision in Murphy does not apply. And, we find unavailing the Borough's argument that the subdivision of plaintiff's lots — from double to individual lots — renders the decision in Murphy inapplicable for purposes of the doctrine of res judicata.

In Murphy, the court addressed the public right to access the beach, described as a 100-foot-wide area adjacent to the high-water mark of the

---

[9] We defer to a trial court's evidentiary ruling absent an abuse of discretion and thus defer to Judge Camp's 1938 determination to exclude map B-40 because it lacked the signature of the County Clerk. We therefore do not rely on it.

A-1819-22

Atlantic Ocean, from which the Murphys had sought to eject the Borough. 123 N.J.L. at 88-89. At the time, the 100-foot area encompassed the entire area from east of the lots on Ocean Avenue to the highwater mark of the Atlantic Ocean, the entire length of plaintiff's property, including the ocean frontage. Even though plaintiff's property has been divided to create oceanfront lots, a change in configuration, length and width of the property does not alter plaintiff's legal rights as determined by the court in Murphy. See United States v. Gen. Motors Corp., 323 U.S. 373 (1945) (holding a property interest exists if an individual has a "right to possess, use and dispose of" the property). The Murphy court described the area as "the strip of beach . . . not marked out into lots but . . . shown on the map without any designation" in its decision. Murphy, 123 N.J.L. at 89. The jury verdict in favor of the Murphys, stated "[w]e the [j]ury do find that the plaintiffs do recover of the defendant possession of the premises mentioned and described in the complaint. Whereupon [j]udgment final is entered in favor of the [p]laintiffs and against the defendant." The complaint described the property as "measured along the easterly side line of said Ocean Avenue . . . to the high[-]water mark of the Atlantic Ocean."

On appeal, the Murphy court in its written decision stated there was:

> nothing about the maps which conclusively indicates a
> dedication. The beach tract was not designated as park

land or public land in any way. It was unmarked. It is contended that it is not necessary to constitute a dedication that the platted public place should be given any name, . . . But in those cases the locations were indicated as public parks by the drawing on the maps of trees, paths, a fountain and a lake, clearly depicting a public park. Furthermore, in those cases, the maps were held merely to be evidence of dedication to be considered along with other facts, and not to be conclusive proof which precluded contradiction.

[Id. at 90-91 (internal citations omitted).]

The court was unequivocal in its finding that there was no evidence on any of the maps that conclusively indicated a dedication of Murphy property to the Borough for a public purpose. Thus, the Borough's argument is belied by the record, and we are not convinced by its argument that the oceanfront area was not part of the property addressed by the Murphy court.

We now turn to address the Borough's next contention that the issue addressed in Murphy is not the same issue presented in the current matter. The Borough argues "[t]he court in Murphy never determined the issue of the existence of a boardwalk right-of-way located between the two western-most lots and the [oceanfront] lot," and "the Murphy trial dealt with and determined the entirety of the beach area had not been dedicated to the public use by the filing in 1878 of [m]ap A-166."

We reject these arguments based on the holding in <u>Murphy</u>, which again addressed the Murphys' right to eject the Borough from their property, and the court's finding of no public right of access or dedication to the public of any property owned by plaintiff, which we discern would have encompassed the lots from Ocean Avenue to the Atlantic Ocean, the same issue before the motion court. From the record it is clear the court in <u>Murphy</u> addressed all claims to a boardwalk right-of-way on the Murphy property. The court specifically characterizes the land at issue as including a boardwalk constructed in 1896 over the Murphy land and considers the Murphys' licensing and "erection of the boardwalk." <u>Id.</u> at 89. We therefore conclude, based on this record, that the court's holding on appeal applies to the entirety of the Murphy property and the lots as they existed in 1938, including the beachfront, boardwalk right-of-way and the entire property as owned by the Murphys at that time.

In further support of its argument, the Borough contends that a boardwalk right-of-way is necessary to prevent the areas presently designated as 3 and 2.01 from becoming landlocked. The Borough argues "a boardwalk easement, could provide a viable means of egress to those [oceanfront] lots" because "landlocked lots are disfavored in New Jersey" under N.J.S.A. 40:55D-38(b)(2), which "provides for access for firefighting and emergency

equipment," and N.J.S.A. 40:55D-35, "which prevents the construction of a structure unless the lot abuts a street."

However, in its brief, the Borough admits that lots 3 and 2.01 are not technically landlocked, stating "for the six lots in question [lots 3, 2.01, 5, 6, 47, and 48] with this particular property all being jointly owned, lots 3 and 2.01 are not technically landlocked." The Borough appears to be arguing that the property would be landlocked in the future if plaintiff sells these oceanfront lots. We, however, decline to address abstract questions or issue advisory opinions, which we consider the Borough is asking us to do based on the admitted fact that plaintiff owns all of the lots at issue here. Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107 (1971); see also G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009) (declining to address hypothetical questions about un-enacted ordinances or to provide advisory opinions); State v. Ghigliotty, 463 N.J. Super. 355, 386 (App. Div. 2020); In re N.J.A.C. 12:17-2.1, 450 N.J. Super. 152, 170 (App. Div. 2017) (declining to render an advisory opinion). Therefore, given this admission, we do not countenance the Borough's argument that a boardwalk right-of-way is necessary in order to prevent landlocked lots because they are disfavored in our State.

There is also no support for the Borough's contention that the Murphys, plaintiff's predecessors in title, conveyed a permanent right of public access over or across their property. We therefore reject the Borough's argument that any part of plaintiff's property is reserved for a boardwalk right-of-way or for public access. Both parties acknowledge that prior to the 1938 litigation, the Murphys had granted the Borough licenses to use a portion of their property for a boardwalk and that multiple licenses may have been granted in the years preceding the 1938 decision. On this issue, the Murphy court determined that by licensing the boardwalk to the Borough, the Murphys were not granting permanent rights to the boardwalk; rather, they were exercising their rights as owners of the beach. 123 N.J. at 89-90. This is consistent with the testimony provided at trial by the then co-owner, Nina Murphy.

The Borough has also not demonstrated any facts supporting its argument that following the final judgment upholding the jury verdict in Murphy, there was a dedication of Murphy property for a boardwalk right-of-way. The dedication of private lands to public use is essentially a matter of intent, and in assessing whether a dedication has occurred, the court should concern itself not with intentions that remain unrevealed but with those evidenced "by the acts or conduct of the dedicator." Velasco v. Goldman Builders, Inc., 93 N.J. Super.

123, 134 (App. Div. 1966) (quoting Haven Homes v. Raritan Tp., 19 N.J. 239, 246 (1955)).  When a landowner "so acts as to raise in others a well[-]founded belief that he intends to donate to the public the easement, and such persons change their situation in consequence of such belief," he is estopped from denying, as against them, the intended dedication.  Velasco, 93 N.J. Super. at 136 (quoting Cent. R.R. Co. v. State, 32 N.J.L. 220, 221-22 (Super. Ct. 1867)).

In Murphy, the court found plaintiff had not dedicated land for public use; whether on the beach track or boardwalk area that had been licensed to the Borough for several years dating back to the late 1800s.  In reaching its decision, the appellate court emphasized in its written decision that the trial record supported a finding the Murphys never relinquished ownership of any part of their property, but rather continued to exercise jurisdiction over the land as owners by "licensing" the erection of the boardwalk, while establishing the boundaries around its beach and bathhouses, including erecting poles and using ropes to cordon off the property, employing lifeguards, and maintaining the beach.  And, Judge Ford stated, "there was no dedication of land to the public use as a [thirty]-foot recreational easement for boardwalk purposes or anything else."

We conclude the Borough offered no proofs establishing a dedication of

plaintiff's property following <u>Murphy</u> to defeat plaintiff's motion for summary judgment. <u>See</u> <u>Velasco</u>, 93 N.J. Super. at 134. Because a public dedication is a matter of intent, <u>ibid.</u>, the Borough must demonstrate plaintiff manifested an intent to dedicate the boardwalk right-of-way to the public, which it has not done here. The language of plaintiff's deed alone is insufficient as the sole evidence of the Borough's claimed right-of-way because the deed appears to have incorrectly relied on map B-40.[10] <u>Ibid.</u>

Because a prior court of competent jurisdiction entered a final judgment as to these same issues, involving the same parties or parties in privity, addressing the same cause of action, we are convinced the doctrine of res judicata bars relitigation of the Borough's claim to a boardwalk right-of-way over plaintiff's property. <u>Brookshire Equities</u>, 346 N.J. Super. at 318.

To the extent we do not address any of the Borough's remaining arguments, it is because we find insufficient merit in them to warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] The 1993 deed includes "the area of the [thirty-]foot wide boardwalk."

A-1819-22